**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

GRETHAKA OÜ )
Plaintiff )
)
) C.A.: TO BE DETERMINED
v. )
)
)
CLICK LABS, INC.; SAMAR SINGLA; )
CLICK-LABS.COM )
Defendants )
)
)

**COMPLAINT**

Plaintiff Grethaka OÜ hereby asserts the following claims for breach of contract, fraud, infliction of emotional distress, and unjust enrichment against Defendants Click Labs, Inc., Samar Singla, and Click-Labs.com (collectively, Defendants) , and alleges as follows:

**INTRODUCTION**

1. This is an action brought against Defendants by Plaintiff on the basis of a contract entered into by and between Plaintiff and Defendants, dated May 12, 2020, for the purpose of services provided by Defendants for Plaintiff (Exhibit A). Entitled "Master Service Agreement", the contract covered services relating to the creation of "an online platform where users can view other nearby users and connect with them via chat/video call". Plaintiff initiated this action due to the fact that Defendants failed to provide services, and the deliverables, as required under the contract within the set period of time, Defendants failure to terminate the contract pursuant to the terms, Plaintiff suffering harm due to Defendants breach and non-performance under the

contract, and mental, and physical, anguish suffered by members of Plaintiff's company due to severe anxiety caused by Defendants' breach.

**PARTIES**

2. Plaintiff Grethaka OÜ is an online application development and marketing company located in Hitsaajankatu 6, 00810, Helsinki, FINLAND. Plaintiff is presently engaged in the creation and development of the online application 'Sextimer', serving as an online dating tool to allow its users to meet other, potentially interested parties through its application. The 'Sextimer' requires users to signup to create accounts.

3. Defendant CLICK LABS, INC. is a company having its principal place of business in 4830 West Kennedy Blvd., Ste. 600, Tampa, Fl. 33609. Click Labs, Inc. is a 'software as a service' technology service provider catering to entrepreneurs and small and medium enterprises with its head offices located in India, the UK, USA, and Singapore. Click Labs, Inc. alleges to have 1000 plus clients that handle more than 3 million transactions a month, ClickLabs is providing solutions for customized software development in more than 160 countries.[1]

4. Defendant SAMAR SINGLA is the chief executive officer and authorized signatory of Defendant Click Labs, Inc., whereby Defendant Samar Singla has an address of 600 1st Street Avenue, Ste. 114, Seattle, WA 98104. On information and belief, Defendant Samar Singla is responsible for decision making, finances, and customer relations at Defendant Click Labs, Inc.

5. Defendant CLICK-LABS.COM is a website entity operating to market the services of Defendant Click Labs, Inc. Works and services marketed by Defendant Click-Labs.com includes 'Jugnoo' and 'Jungleworks', which are platforms that allow for the development and operation of mobile and online applications.

---

[1] click-labs.com.

6. Based on a review of the publicly-available records and information, all Defendants operate within the State of Florida.

**JURISDICTION AND VENUE**

7. There is complete diversity as to the parties as Plaintiff Grethaka OÜ is a citizen of Finland, and Defendants are citizens and/or principally operate within the State of Florida.

8. As set forth below and incorporated herein, the amount in controversy requirements of 28 U.S.C. §1332 are satisfied in that there is more than $100,000.00 at issue, exclusive of costs and interests.

9. This action properly lies in the Middle District of Florida pursuant to 28 U.S.C. §1391(a) as the contract executed and entered into by and between Defendants Click Labs, Inc., Samar Singla and Plaintiff Grethaka OÜ was believed to be performed in Florida due to Defendant Click Labs, Inc. having its stated principal place of business in Florida.

**FACTUAL ALLEGATIONS**

**A. Master Service Agreement and Annexure**

10. On or about May 12, 2020, Plaintiff and Defendant Click Labs, Inc., with Defendant Samar Singla serving as CEO and signatory authority, did enter into an agreement for services relating to the development of the 'Sextimer' application. The agreement was entitled the 'Master Services Agreement'.

12. The 'Sextimer' application was created by Plaintiff, which was to be a mobile-based application for initiating online dating between the application's users.

13.     Accompanying the 'Master Service Agreement' was an Annexure setting forth in detail the 'Sextimer' deliverables to be provided by Defendants to Plaintiff at the end of the contractual term (Exhibit B).

14.     As set forth in the Annexure, the Project was to be delivered within 80 to 100 days, subject to initiation work and 3rd party platform integrations (Exhibit B, pp. 14).

15.     As further shown in the Annexure, the payment terms did not include any stipulations to WORK STOPPAGE.

16.     The Term of the 'Master Service Agreement' would occur until terminated by either party.

17.     From early 2020 through early 2022, Defendants alleged, on information and belief through the direction of Samar Singla, that work relating to programming of the 'Sextimer' application was being performed.

18.     In or about January 2022, Plaintiff identified many significant errors and mis-coding in the latest Sprint of the application development.  These errors were highlighted in a chart delivered to Defendants.  Plaintiff verifies that the errors remained unfixed (Declaration of Allan Jorits); See Exhibit C.

19.     In or about March 2022, Plaintiff created a screen recording on use of the latest Sprint of the 'Sextimer' application, whereby the errors were clearly visible.  This screen recording is viewable at https://app.box.com/s/iyb4fjmvvu716giqfzgz0lpyl2k7k2zh .

20.     On information and belief, and in accordance with reviews of the 'Sprints', or sections of programming development, by Plaintiff, the alleged work and programming development by Defendants was not being performed, or was being performed substandard at best.  **(Declaration of Allan Jorits).**

21. In or about January 2022, Plaintiff requested a review of the code by its quality control expert to determine the quality of the code being created by Defendants. Defendants summarily refused in lieu of continued payments.

22. In or about February 2022, Defendants stopped work on the coding of the 'Sextimer' application, demanding further payment. On information and belief, a stop work provision was not apparent in the contract or the Annexure.

23. On information and belief, the 'Master Service Agreement' has not been terminated by Defendants as of the filing date of this Complaint, even though Defendants held the right to terminate (Exhibit A, §§5.1 and 5.2).

24. As Defendants have failed to terminate the 'Master Service Agreement', Plaintiff relied on Defendants continuing work on the development of the 'Sextimer' application.

25. In accordance with the contract, Plaintiff compensated Defendants in an amount of over $100,000.00, from the initiation of the contract until Defendants stopped work.

26. As of May 2022, Defendants removed Plaintiff's application from its online server, as well as denied Plaintiff access to the application.

**B. Non-disclosure Agreement**

27. Commensurate with the execution of the 'Master Service Agreement', Plaintiff and Defendants signed a Non-Disclosure Agreement (Exhibit D).

28. The Non-disclosure Agreement allowed for the pursuit of a temporary restraining order or preliminary injunction in the event of a dispute between the parties that relates to the Non-disclosure Agreement.

29. As shown by Defendants communications, Defendants provided access of confidential information for whom receipt of the confidential information was not necessary in performance

of the contract. This communication related to financials of the 'Sextimer' application in Defendants attempt to pressure Plaintiff in continuing to support their substandard coding work. The release of this information is a violation of para. 7 of the Non-disclosure Agreement (Exhibit D).

**C. DEFENDANTS' HISTORY OF CONTRACTUAL BREACH AND FRAUD**

30. On information and belief, and as shown by screenshot images on social media, platforms, Defendants have established a history of substandard coding work, and fraudulent activity (Exhibit E).

31. On further information and belief, Defendants have not addressed the accusations of substandard work, unprofessionalism, and fraudulent activity.

**COUNT 1 - VIOLATION OF 15 U.S.C. §45(a) ("FTC Act")**

32. Plaintiff incorporates by reference each of the preceding paragraphs as incorporated herein.

33. Through its contractual arrangement with Plaintiff, Defendants verified the continued use of the site Jugnoo.

34. Plaintiffs, through the signing of the contracts with Defendants, became customers of Defendants.

35. Defendants, through their own action or inaction, coupled with negligence, allowed the deletion and removal of Plaintiff's data and code to be removed and/or deleted.

36. Defendants actions or inaction, in continually advertising code storage services, which resulted in the loss, both economic and real, represent a violation of section 5 of the FTC Act (15 U.S.C. §45(a)), notably through unfair and deceptive acts.

## COUNT II- BREACH OF CONTRACT

### A. Master Service Agreement

37. Plaintiff incorporates by reference each of the preceding paragraphs as incorporated herein.

38. The Master Service Agreement is a valid and binding contract.

39. Pursuant to the terms of the Master Service Agreement, Plaintiff continually paid fees for Defendants efforts in coding for the 'Sextimer' application, totaling over $100,000.00.

40. Due to an ill-performing version of the 'Sextimer' application, Plaintiff requested to review the coding for analysis purposes.

41. Defendants stopped work on the application coding effort, however stopping work on the application was not listed as being a permissible action under the terms of the Master Service Agreement.

42. Defendants further removed Plaintiff's 'Sextimer' application from the server, whereby Plaintiff was no longer able to access the application.

43. Defendants have not terminated the Master Service Agreement as of the filing of this complaint.  Furthermore, Defendants have not delivered the 'Sextimer' application within the 80 to 100 day time period as required under the contract.

44. As a result of Defendants impermissible stop work action, the removal of the 'Sextimer' application from the server, and Defendants not allowing Plaintiff to have access to the application, Plaintiff has been damaged in the amount of at least $100,000.00, representative of the amount paid under the contract.

45. Plaintiff further asserts punitive damages in the amount of $200,000.00 to reflect Defendants continued fraudulent activity in the business of mobile and online application development.

**B. Non-Disclosure Agreement**

46. Plaintiff incorporates by reference each of the preceding paragraphs as incorporated herein.

47. The Non-disclosure Agreement is a valid and binding agreement.

48. Pursuant to the terms of the Non-disclosure Agreement, Defendants were bound to not disclosure confidential information, including financial information, to employees of Defendants who were not involved with the development of the 'Sextimer' application.

49. Defendants, as shown in communications, disclosed information about the Plaintiff's financials when threatening, and then finally, stopping work on the application development.

50. This improper disclosure was a breach of the Non-disclosure Agreement.

51. Plaintiff hereby requests issuance of a temporary restraining order, to be formally requested, and issued against the financial accounts of defendants, against the defendant Click-labs.com's website (https://click-labs.com) and against defendants' continued disclosure of Plaintiff's confidential information.

**COUNT III - UNJUST ENRICHMENT**

52. Plaintiff incorporates paragraphs 1-46 as if fully restated herein.

53. In the alternative to any claim for breach of contract, Defendants are liable to Plaintiff under the doctrine of unjust enrichment.

54. As set forth in the above, Plaintiff has paid Defendants amounts of over $100,000.00 for the development of the 'Sextimer' application.

55. Defendants have improperly disallowed Plaintiff to gain access to the current version of the application.

56. Defendants have issued a stop work order at the present, which was not permissibly allowed under the Master Service Agreement.

57. Defendants have retained the fees paid by Plaintiff and have not offered a refund.

58. Defendants, having not provided compensation to Plaintiff and maintaining access to the application, are liable for the amounts paid by Plaintiff.

**COUNT IV- FRAUD**

59. Plaintiff incorporates paragraphs 1-53 as if fully restated herein.

60. Upon a review of Defendants' latest iteration of the 'Sextimer' application, a number of errors, which can be blamed on poor coding, continued to exist and where not corrected.

61. Defendants were paid more than 2/3rd's of the contract price, however the significant errors remained in the 'Sextimer' application.

62. Defendants did not correct the errors, but instead made assertions that they did correct them. Plaintiff's screen record shows significant errors remained.

63. Defendants' behavior in not correcting the significant errors while demanding further payment, and then locking Plaintiff out of access to the 'Sextimer' application is evidence of Defendants fraudulent behavior.

**COUNT V - INFLICTION OF EMOTIONAL DISTRESS**

64. Plaintiff incorporates paragraphs 1-58 as if fully restated herein.

65. As a result of Defendants' actions in locking Plaintiff out of access to the 'Sextimer' application, while simultaneously taking stop work action, persons associated with Plaintiff became severely and emotionally distressed.

66. The emotional distress was a reaction to Plaintiff having paid Defendants significant amounts totaling over $100,000.00, and further being able to be satisfied that Defendants' coding efforts were up to industry standards, which they were not.

67. Plaintiff seeks damages reflective of the emotional distress suffered by these individuals associated with Plaintiff, namely investors and officers of the company.

**JURY TRIAL DEMANDED**

68. Plaintiff hereby demands a jury trial.

Dated: June 10, 2022

Respectfully Submitted:

Robert DeWitty
*Pro Hac Vice pending*
Attorney, Plaintiff Grethaka OÜ
700 12th Street, Ste. 700
PMB 97864
Washington, D.C. 20005
Tele: 8665599183
Fax: 2025138071
Email: admin@dewittyip.com

/s/ Agnes Mombrun Geter
Agnes Mombrun Geter
Mombrun Law, PLLC
FL Bar No.: 0077001
2850 34th St N, #350
St. Petersburg, FL 33713