UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GRETHAKA SOLUTIONS OU,

   Plaintiff,

v.                                                                    Case No. 8:22-cv-1341-WFJ-SPF

CLICK LABS, INC.; SAMAR SINGLA;
CLICK-LABS.COM; NORA JAIN; and
AKANKSHA JAIN,

   Defendants.

_____/

# ORDER

Before the Court is Defendants Click Labs, Inc. and Nora Jain's Motion to Dismiss (Dkt. 49) and Defendant Samar Singla's Motion to Dismiss (Dkt. 73).[1] After careful consideration of the allegations of the Amended Complaint, the applicable law, and the entire file, the Court concludes the motions are due to be granted.

## I. BACKGROUND

Plaintiff Grethaka Solutions OU is an online application development and marketing company located in Finland. Dkt. 35 ¶ 5. Defendant Click Labs, Inc. is

---

[1] The docket does not reflect whether Defendants Click-Labs.com and Akanksha Jain have been served.

a Software as a Service ("SaaS") provider located in Florida that offers for sale white label software applications (the "Software"), including customization of these products. *Id*. ¶¶ 1, 6, 13. Defendant Nora Jain is the Director of Click Labs, Inc. and has a Florida address. *Id*. ¶ 8. Defendant Samar Singla, whose address is in the United Arab Emirates, is the Chief Executive Officer of Click Labs, Inc. *Id*. ¶ 7.

The Amended Complaint sets forth the following allegations, construed in favor of Plaintiff. According to Plaintiff, Defendants marketed and sold customizable Software to Plaintiff and other clients while offering assurances that their Software could meet clients' needs. *Id*. ¶ 2. Click Labs, Inc. owns the Software and has exclusive control over the code comprising the Software. *Id*. ¶ 19. Plaintiff alleges that Click Labs, Inc. is controlled and operated by the other named Defendants for the purpose of carrying out an unlawful scheme through wire fraud or, more specifically, internet fraud. *Id*. ¶¶ 1, 19, 46. The alleged scheme involves "contractually promising but continually failing to deliver customized software products to clients, including [Plaintiff], while failing to fully return funds paid by clients for said customized software products." *Id*. ¶ 1. Plaintiff claims that after the scope of work and periodic fees for the customization are decided between the parties, Defendants delay the delivery of the Software, fail to sufficiently customize the Software, ignore client communications, breach the

customer agreements by failing to complete and deliver a working version of the customized Software, and refuse to refund prior payments. *Id.*

The agreement between the parties in this case relates to the customization of the "Jugnoo" application, which Plaintiff believed to be a white label software application. Dkt. 35 ¶ 20; Dkt. 35-2 ¶ 3. Plaintiff contracted with Click Labs, Inc. to set up a dating application called Sextimer—"an online platform where users can view nearby users and connect with them via chat/video call." Dkt. 35-5 at 8, 36. Plaintiff paid Defendants contractual fees totaling over $100,000. Dkt. 35 ¶¶ 65, 75, 80, 85, 88; Dkt. 35-2 ¶¶ 5, 10. Almost immediately after the agreement was signed, Plaintiff allegedly found Defendants' work to be of poor quality, resulting in delays in the application's delivery. Dkt. 35 ¶ 22; Dkt. 35-2 ¶ 7. Plaintiff grew concerned about the "serious bugs" and functionality of the application, together with the delays. Dkt. 35 ¶ 22; Dkt. 35-2 ¶ 7. As the problems escalated, Plaintiff continued to discuss the issues with Defendants and finally requested (1) to review the code of the customizations so that it could be tested by a coding firm and (2) to be given full access to the application being customized. Dkt. 35-2 ¶ 12; Dkt. 35-5 at 41. Plaintiff contends that at this point, Defendants refused to share the code without further payment. Dkt. 35-2 ¶ 12. Plaintiff alleges Defendants never delivered a complete, customized version of the Jugnoo software or refunded the payments made. Dkt. 35 ¶¶ 25, 26; Dkt. 35-2 ¶ 14.

Relying on these allegations, the five-count Amended Complaint seeks redress for: (1) a violation of §1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962–68, with predicate acts of wire fraud[2]; (2) an unlawful federal RICO conspiracy under §1962(d); (3) breach of the Master Services Agreement and the Non-Disclosure Agreement (the "Agreement") pertaining to a dating application created by Plaintiff; (4) fraud in asserting that significant errors in the customized white label application had been corrected, while simultaneously failing to make the corrections and demanding further payment; and (5) infliction of emotional distress based on Plaintiff's employees and members having lost funds and opportunities to acquire market share.[3] *Id*. Plaintiff's damages allegedly exceed $100,000 and may be trebled under RICO. Dkt. 35 ¶¶ 65, 67, 85.

Attached to the Amended Complaint are declarations by three former clients of Click Labs, Inc. These declarants include South Africa resident Leigh Morum and Mexico resident Julio Monroy Ortega. Dkts. 35-3 & 35-4. The third declarant, Allan Jorits, is also a signator of the parties' Agreement at issue in this case. Dkt. 35-2 (declaration); Dkt. 35-5 at 7 (Agreement). Each declarant entered

---

[2] Plaintiff's initial complaint did not contain any RICO claims. Dkt. 1. It sought damages for violations of 15 U.S.C. § 45(a) under the Federal Trade Commission Act, breach of the agreement, unjust enrichment, fraud, and infliction of emotional distress. *Id*.

[3] Plaintiff and Defendants Click Labs, Inc., Nora Jain, and Samar Singla have reached an agreement to drop Count V. Dkt. 49 at 18; Dkt. 73 at 19.

into a written contract with Click Labs, Inc. for the customization of its Software. Dkts. 35-2, 35-3, 35-4.

## II. LEGAL STANDARD

The *Twombly/Iqbal* standard requires a complaint to contain enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility is satisfied "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When pleading fraud, a plaintiff faces a heightened pleading standard. Fed. R. Civ. P. 9(b). Under Rule 9(b), the circumstances constituting the fraud must be alleged "with particularly."

This heightened standard applies to civil RICO claims predicated on fraud under § 1962(c). *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). To survive a motion to dismiss, a plaintiff bringing a racketeering claim predicated on fraud must allege with specificity "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380–81 (11th

Cir. 1997)). Each defendant's participation in the fraud must be separately alleged. *Id*. However, a RICO conspiracy claim under § 1962(d) need not satisfy the particularity requirement of Rule 9(b), as a conspiracy claim is based on the defendants' agreement to the overall objective of the conspiracy or to commit predicate acts. *Cardenas v. Toyota Motor Corp.*, 418 F. Supp. 3d 1090, 1103 (S.D. Fla. 2019); *Am. Dental Ass'n*, 605 F.3d at 1293.

In ruling on a motion to dismiss, a court accepts all factual allegations as true and construes them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). All reasonable inferences from the allegations are drawn in favor of the plaintiff. *Stephens v. Dep't of Health & Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). Moreover, a court only considers "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

### III. DISCUSSION

Though presented in two separate motions, Defendants Click Labs, Inc., Nora Jain, and Samar Singla move to dismiss the Amended Complaint on identical grounds. Dkts. 49 & 73. Both motions assert that Plaintiffs' RICO claims and remaining state law claims are lacking several essential elements. *See* Dkts. 49 &

73. Samar Singla also contests this Court's exercise of personal jurisdiction over him. Dkt. 73 at 17–19.

**A. Count I: RICO**

A plaintiff seeking relief under the civil provisions of RICO must allege that "the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

Concerning these elements, a RICO "enterprise" may be an individual, a legal entity, or a group of individuals "associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Under the statute, it is illegal "for any person employed by or associated with any enterprise" to conduct or participate in activities of the enterprise affecting interstate or foreign commerce through a pattern of racketeering activity. *Id.* § 1962(c). A "person" is further defined as "any individual or entity capable of holding a legal or beneficial interest in property." *Id.* § 1961(3). A "pattern of racketeering activity" requires at least two acts constituting racketeering activity—such as wire fraud—that have occurred within a ten-year timespan. *Id.* §§ 1961(1), (5).

In their motions, the three moving Defendants assert that Plaintiff has failed to (1) distinguish between the RICO "person" and the RICO "enterprise," (2)

allege wire fraud with particularity, and (3) allege a "pattern" of racketeering activity.  The Court addresses these assertions in turn.

### 1. Person/Enterprise Distinction

A party cannot be both a "person" and an "enterprise" under the plain and unambiguous language of § 1962(c).  *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161–62 (2001); *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270–71 (11th Cir. 2000) (*en banc*).  "The distinction between the RICO person and the RICO enterprise is necessary because the enterprise itself can be a passive instrument or victim of the racketeering activity."  *Goldin Indus., Inc.*, 219 F. 3d at 1270.  Unlike an individual defendant who may act through a corporation as an officer, employee, or even a sole shareholder, "a corporation cannot act except through its officers, agents, and employees."  *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1357 (11th Cir. 2016) (affirming dismissal where complaint alleged no distinction between the corporate defendant and the enterprise composed of corporate defendant and corporate officers and agents).  Thus, a corporation and its officers cannot form a RICO enterprise where the officers and agents are conducting the "normal business" of the corporation.  *Id.* at 1356–57; *Allen v. First Unum Life Ins. Co.*, No. 2:18-cv-69-FtM-99MRM, 2019 WL 1359480, at *4 (M.D. Fla. Mar. 26, 2019) (dismissing RICO counts alleging

defendant corporation and its officers, agents, and employees formed an enterprise).

Here, Plaintiff alleges that each named Defendant—Click Labs, Inc., Nora Jain, Samar Singla, Akanksha Jain, and Click-Labs.com—is a "person" and that, together, they comprise an "enterprise" as defined by the statute. Dkt. 35 ¶¶ 47–49. The Amended Complaint further alleges that Nora Jain, Samar Singla, and Akanksha Jain, as officers of Click Labs, Inc., have participated "in the conduct of Click Labs, Inc., namely the common goal of the purpose of marketing, selling, communicating, and collecting fees, all based upon fraudulent promises offered to clients of the enterprise." *Id*. ¶ 50. In other words, Plaintiff pleads that the officers of Click Labs, Inc., while acting within the scope of their employment, engaged in an enterprise with the corporation. This is insufficient to establish a RICO enterprise, as Plaintiff has not shown a distinction between the alleged enterprise and the corporate defendant acting through its officers, agents, and employees. *See Ray*, 836 F.3d at 1357; *Allen*, 2019 WL 1359480, at *4.

As the Eleventh Circuit has recognized, "permitting plaintiffs to plead an enterprise consisting of a defendant corporation and its officers, agents, and employees acting within the scope of their employment would broaden RICO beyond any reasonable constraints." *Ray*, 836 F.3d at 1357 (citations omitted). "Allowing such pleadings to go forward would turn every claim of corporate fraud

9

into a RICO violation." *Id.* (citation omitted). Moreover, Plaintiff's allegations fail to demonstrate that the individual Defendants, as corporate officers of Click Labs, Inc., are distinct from the latter such that they could form a RICO association-in-fact enterprise. *See id.*

Ultimately, because a corporate defendant, on these facts, must be distinct from the alleged enterprise, Plaintiff has failed to establish the enterprise element of its RICO claims. *See id.*; *Allen*, 2019 WL 1359480, at *5. Accordingly, Plaintiff's RICO claims must be dismissed. .

   *2. Wire Fraud*

Even if Plaintiff has sufficiently alleged an enterprise, it has failed to sufficiently plead instances of wire fraud to support its § 1962(c) claim. Where a racketeering claim is predicated on wire fraud, the plaintiff must allege: "(1) intentional participation in a scheme to defraud, and, (2) the use of the interstate mails or wires in furtherance of that scheme." *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009) (citations omitted); 18 U.S.C. § 1343 (wire fraud). RICO claims of wire fraud must also be pled with particularity in accordance with Rule 9(b). *Am. Dental Ass'n*, 605 F.3d at 1291.

In alleging wire fraud, Plaintiff relies on declarations attached to the Amended Complaint in an attempt to establish the who, what, when, and where of Defendants' alleged fraudulent communications for purposes of Rule 9(b).

However, the Amended Complaint and declarations fall short. Defendants' alleged communications to Plaintiff and the declarants consist of vague pre-contractual assurances concerning the customization of the Software, the scope and timing of delivery, and success stories of "unrelated third parties." Dkt. 35 ¶¶ 20−21, 28. These alleged fraudulent communications also include statements made *after* Plaintiff and the declarants signed agreements with Defendants and once delivery and contract performance issues arose. *Id*. ¶¶ 22–24, 29–31, 36–43. Notably, none of communications or statements are attributable to Defendant Nora Jain.

Plaintiff has failed to allege any misrepresentation apart from contractual obligations under the aforementioned agreements. To the extent that Plaintiff takes issue with Defendants' statements concerning its success in creating customized Software for other clients, success stories obviously play an important role in marketing any service. There is no allegation that Defendants shared these any accomplishments while knowing them to be false. Nor does the existence of disgruntled former customers make the successes untrue.

Additionally, any discussions concerning completion and delivery times were subsumed into the agreements at the time of signing, and the alleged pre-agreement communications are indistinguishable from the terms of the agreement that Plaintiff claims were breached. Under Florida law, a plaintiff may not recover in tort based on the same underlying conduct giving rise to a breach of contract

claim. *See Islands Travel & Tours, Ltd., v. MYR Indep., Inc.*, 300 So. 3d 1236, 1239–40 (Fla. 3d DCA 2020) (holding plaintiff may not recover in tort for misrepresentation concerning failure to perform under contract where breach of contract was based on same underlying conduct). Consequently, the alleged communications made after the signing of contracts with Click Labs, Inc.— including demanding contractual payments and then refusing to refund those payments—do not support claims of fraud.

Permitting Plaintiff's racketeering claim to proceed would permit the RICO statute, which was intended to prohibit unlawful activity, to enforce common business disputes. *See Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992) ("RICO has not federalized every state common-law cause of action available to remedy business deals gone sour."); *Yesko v. Fell*, No. Civ-ELH-13-3927, 2014 WL 4406849, at *7–12 (D. Md. Sept. 5, 2014) (dismissing RICO claims with prejudice where complaint alleged only commonplace business dispute). Assuming all factual allegations as true, Plaintiff cannot replead them to constitute wire fraud.

### *3. Pattern of Racketeering Activity*

Finally, the Court finds that Plaintiff has not sufficiently pled a pattern of racketeering activity. A plaintiff establishes a pattern of racketeering activity by alleging: "(1) the defendants committed two or more predicate acts within a ten-

year span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (first citing 18 U.S.C. § 1961(5); and then *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239–43 (1989)). Merely alleging two or more predicate acts is insufficient. A plaintiff must also allege that the predicate acts are related to one another and that the acts pose a threat of ongoing, continuing criminal activity—"continuity plus relationship." *Jackson*, 372 F.3d at 1264–65 (first citing *H.J. Inc.*, 492 U.S. at 239; and then *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 n.14 (1985)).

Plaintiff asserts three separate unlawful acts of wire fraud committed against declarants by Defendants "to market, communicate, create agreements, and collect funds to [the enterprise's] U.S. based account." Dkt. 35 ¶ 61. These three predicate acts against declarants Jorits, Morum, and Monroy Ortega, respectively, are alleged to be related to one another because:

> they have *the same purpose* (that being the selling and customizing of white label software applications exclusively owned and controlled by Click Labs, Inc.), *similar results* (that being the failure of Defendants to deliver completed and operable versions of the white label software applications per the terms of the agreement, failure to adhere to the delivery schedule), and the [same] *method of commission* (that being aggressive sales tactics prior to the signing of the agreement; communication failure on the part of Defendants, continuous delays by Defendants that resulted in failure to deliver on time; persons supposedly related to the customization of the white label software applications "coming and going" during the project period; continuous

13

>"pushes" for payments by clients; and the refusal of Defendants to refund full fees to clients upon requests).

*Id.* ¶ 56 (emphasis added).

Because alleging a relationship among the predicate acts is alone insufficient, Plaintiff must also show that the predicate acts "amount to, or . . . otherwise constitute a threat of continuing racketeering activity." *H.J. Inc.*, 492 U.S. at 240.  Of the two types of continuity—open-ended and close-ended—Plaintiff alleges an "open-ended continuity."[4]  Dkt. 35 ¶ 58.  Open-ended continuity requires establishing a "the *threat* of continuity" either through (1) "the racketeering acts themselves includ[ing] a specific threat of repetition extending indefinitely in the future" or (2) "the predicate acts or offenses being part of an ongoing entity's regular way of doing business." *Jackson*, 372 F.3d at 1265 (quoting *H.J. Inc.*, 492 U.S. at 242).  Open-ended continuity implicates "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241.  Under this theory, Plaintiff must show that the alleged racketeering activity is not isolated, but part of a long-term scheme. *Id.* at 242.

---

[4] Unlike an open-ended continuity, close-ended continuity requires that the scheme or pattern last a substantial period of time. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266 (11th Cir. 2004) (noting six months and nine months are not substantial).  The period covering all three agreements spans, at most, about 13 months based on their signing dates: Morum signed an agreement with Click Labs, Inc. on April 2, 2020; Monroy Ortega signed one on May 18, 2020; and Jorits signed Plaintiff's agreement on May 12, 2021. Dkt. 35-2 ¶ 3; Dkt. 35-3 ¶ 3; Dkt. 35-4 ¶ 3.

14

The Amended Complaint alleges the identified predicate acts "amount to the threat of long-term racketeering activity as the method of commission involving wires in foreign commerce is a regular way of doing business for Defendants." Dkt. 35 ¶ 58. Plaintiff alleges that Click Labs, Inc. advertises on its website that it customizes white label software. *Id*. As to the predicate acts committed against Morum and Monroy Ortega, the Amended Complaint alleges that both acts occurred within one year of each other and both involved the white label software "Yelo." *Id*.

These allegations do not support a continuing, on-going threat of criminal activity. The offending acts entail advertising on the Internet, entering into agreements with three purchasers, failing to meet the contractual terms, and refusing to refund certain payments made under the agreements. While Plaintiff attempts to allege some type of fraud in the inducement, neither Morum's nor Monroy Ortega's declarations allege any misrepresentation or false promises made by any Defendant before their respective contracts were signed. Dkts. 35-3 & 35-4.[5]  Moreover, Monroy Ortega, unlike the others, received at least a partial refund on his agreement after filing suit against Click Labs, Inc. Dkt. 35-4 ¶¶ 14−15.

---

[5] Both Morum and Monroy Ortega declare that prior to signing, each communicated to Click Labs, Inc. the importance of the completion date. Dkts. 35-3 ¶ 5, 35-4 ¶ 5. There is no indication that the contracts did not include completion and delivery dates, which became terms of the contract upon signing.

15

That Morum and Monroy Ortega signed agreements within a month of each other does not establish a pattern of activity. Failing to meet and satisfy a particular contract's terms, even for three separate contracts, does not amount to criminal conduct susceptible to a RICO claim.

For the reasons stated above, Plaintiff's RICO racketeering claim must be dismissed. Plaintiff will be given an opportunity to replead this claim and overcome the hurdle of stating plausible facts establishing a RICO enterprise and sufficient, particular facts of a pattern of racketeering activity concerning predicate acts of wire fraud.

## B. Count II: RICO Conspiracy

The Court next turns to Plaintiff's RICO conspiracy claim. Section 1962(d) makes it unlawful to conspire to violate RICO. The essence of a RICO conspiracy claim is that each defendant has *agreed* to participate in the conduct of an enterprise's illegal activities." *Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1291 (S.D. Fla. 2008) (emphasis in original). A party may be liable for RICO conspiracy even if not liable for the alleged substantive RICO claim. *Jackson*, 372 F.3d at 1269. However, the parties must agree to commit an illegal act, and if the complaint fails to state a substantive RICO claim, then the conspiracy claim is without merit. *Id*.

16

With respect to a conspiracy, the Amended Complaint alleges that each Defendant "knew the nature of the enterprise" and "knew that the enterprise extended beyond each Defendant's individual role." Dkt. 35 ¶ 70. Plaintiff further alleges that each Defendant "agreed to facilitate, conduct, and participate in the conduct, management, or operation of the enterprise's affairs in order to financially collect upon false and fraudulent promises, included in the agreement." *Id*. ¶ 71.

Given these conclusory allegations and having determined that the Plaintiff does not allege sufficient facts to state a claim for a substantive RICO violation, the Court finds that Plaintiff's RICO conspiracy claim also fails. Plaintiff will be permitted the opportunity to replead this count.

### C. Counts III, IV, and V: State Law Claims

As alleged in the Amended Complaint, this Court's jurisdiction derives from original federal question jurisdiction, 28 U.S.C. § 1331, based on federal RICO claims, 18 U.S.C. §§ 1961–68. Dkt. 35 ¶ 10. For reasons set forth above, Plaintiff's federal claims counts are dismissed, albeit with leave to amend. The remaining state law claims fall under the Court's supplemental jurisdiction, which this Court would typically decline to exercise if all claims based on original jurisdiction have been dismissed as a matter of finality. *See* 28 U.S.C. § 1367(c)(3); *Palmer v. Hosp. Auth.*, 22 F.3d 1559, 1568 (11th Cir. 1994); *Ciesla v.*

*City of Temple Terrace*, No. 8:22-cv-1142-CEH-TGW, 2022 WL 1720792, at *1 (M.D. Fla. May 27, 2022).

The state law claims might suffice for subject matter jurisdiction purposes if alleged under the Court's diversity jurisdiction. Whether alleged as pendent to federal claims or under this Court's diversity jurisdiction, Plaintiff may also replead its state law claims. The Court notes that, as to Plaintiff's breach of contract claim, Plaintiff fails to allege how Nora Jain is liable as a non-party to the agreement. Plaintiff's fraud count suffers the same lack of particularity and failure to articulate an independent tort as its RICO racketeering claim. Plaintiff's final count alleging intentional infliction of emotion distress is entirely deficient—neither the persons who suffered the emotional distress nor any outrageous conduct is identified.

The Court suggests Plaintiff reconsider whether RICO in this contractual, commercial context here is an appropriate cause of action—or whether it distracts from the gravamen of the real remedies sought.

## CONCLUSION

Accordingly, Defendants' Motions to Dismiss (Dkts. 49 & 73) are **GRANTED** with leave to amend. Plaintiff shall file a second amended complaint, if desired, within **ten (10) days**.

Also within **ten (10) days**, Plaintiff shall file returns of service as to the two

remaining Defendants—Click-labs.com and Akanksha Jain—or show cause in writing why service has not been perfected.  Failure to do so will result in dismissal without prejudice and without further notice as to these two Defendants.

**DONE AND ORDERED** at Tampa, Florida, on March 14, 2023.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel of record